# IN THE MATTER OF THE APPLICATION FOR THE REMOVAL OF THOMAS MOHN FROM THE POSITION AND OFFICE OF ATTORNEY AT LAW OF THE STATE OF MINNESOTA.[1]

July 8, 1921.

No. 20,299.

**Disbarment of attorney — evidence not sufficient.**

The evidence submitted is not sufficient to sustain the charges of misconduct made against the respondent, an attorney at law.

[1]Reported in 184 N. W. 14.

Eli Southworth, as a member of the State Board of Law Examiners, filed a complaint against Thomas Mohn on account of the latter's conduct as an attorney at law in violation of his duty and for wilful misconduct in his profession.

*H. V. Mercer,* for petitioner.

*Frank M. Wilson, A. J. Rockne, Albert Schaller* and *W. H. Gillilt,* for respondent.

HALLAM, J.

This is an application for the removal of Thomas Mohn from his office as attorney at law. The charge is that sometime during the year 1913 he affixed his signature as attesting witness to a codicil to the will of Mrs. Emma M. Hack, after the death of Mrs. Hack, and thereafter used the codicil as so attested in procuring the settlement of a lawsuit. The charge was made by a witness on the stand in a lawsuit in November, 1915. The petition in this proceeding was filed in January, 1917, and the court promptly ordered a reference for the taking of testimony and appointed attorneys to prosecute the case. After the lapse of more than four years the matter was presented to this court.

Respondent was admitted to the bar of Minnesota in 1897, has practiced in Goodhue county ever since, and in Red Wing since 1905. He was twice elected county attorney of Goodhue county and was holding that office at the time of the alleged misconduct. It is conceded that he is a capable lawyer, has enjoyed a large practice, and, save for this charge, has borne a good reputation.

John Hack has for many years been a citizen of Red Wing and a man of substantial fortune. About 30 years ago, then a man of about 65, he married Emma M. Gallasch, a woman about half his age. Soon thereafter he became blind. In the course of years a large part of the family property found its way into the name of Mrs. Hack and on her death on April 24, 1913, a substantial part of the property which had belonged to Mrs. Hack was found in the name or possession of Eugenia Gallasch, a sister of Mrs. Hack. The only testamentary remembrance by Mrs. Hack of her husband was that in a certain contingency, her father would "take well care" of him "and give him all the comforts he needs in his natural life and pay all his personal expenses."

In August, 1902, Mrs. Hack prepared a will and one day stepped into

a store in Red Wing and signed it and asked two men of her acquaintance there present to sign as witnesses, and they did so. This will gave all her estate to her sister Eugenia, and her brother, Adolph G. Gallasch. In 1911 her brother died. Under date of September 3, 1912, Mrs. Hack wrote, in her own handwriting, a second will complete in itself, but reciting that "this writing be added to my as in part to the will I made on the second day of August, 1902." This will is spoken of in these proceedings as the "codicil" and is the document respondent is charged with mutilating.

The so-called codicil consists of three pages. The writing on the first and second completely fills the pages. The second page closes with the words: "This is my last will and only a codicil to my previous will of August 2nd, 1902," and is signed: "Emma M. Hack." The third page contains, in the middle of the page, matter apparently an afterthought and is signed at the end but near the middle of the page: "Emma M. Hack." Below the signature is written: "This is my last will composed of three papers and my name.

Signed by myself (Maggie Stewart is witness)

(Thomas Mohn is witness)

Emma M. Hack, Red Wing, Minn.

Thomas Mohn

Maggie Stewart."

Maggie Stewart was a servant in the Hack home. It is conceded that she signed as a witness at or about the time Mrs. Hack signed the document and that respondent did not sign and was not present at that time. It is conceded that he did thereafter affix his signature. Petitioner claims that he did so after Mrs. Hack's death, respondent that he did so during Mrs. Hack's lifetime and in her presence and at her request. This is the question in the case.

The 1902 will was presented for probate by Miss Gallasch in May, 1913. It was contested by the husband of deceased. It was undoubtedly intended by Mrs. Hack as her will, but probate was refused because of some alleged defect in the execution. An appeal was taken to the district court. Respondent was attorney for Miss Gallasch and he had taken the case on a contingent fee. After the appeal was taken, this codicil was produced by respondent and was used in the interest of Miss

Gallasch in negotiations which followed for a settlement of the case. The case was settled before trial in the district court. Later respondent and Miss Gallasch fell out over the matter of respondent's fees and matters in connection with the settlement. John Hack commenced an action to set aside the settlement. Several other actions between the Hacks and Miss Gallasch followed in rapid succession. It was in one of these actions that Miss Gallasch, testifying about two years after the codicil was first produced, made the charge on which this proceeding is based.

The testimony of Miss Gallasch and of Maggie Stewart is to the effect that they found this codicil in a safe at the Hack home a short time after the will had been found and taken to respondent, that these two and Hedvig Federle, a young lady relative of Miss Gallasch, who had studied law, together took the codicil to respondent, that he looked it over and told them that it was of no value because it had but one witness. Miss Gallasch testified that she did not examine the codicil, but Maggie Stewart testified that she did and that hers was the only attesting signature at that time. Maggie Stewart testified that the codicil produced by the three ladies in respondent's office was the same codicil which was afterwards produced by respondent with his signature affixed.

Respondent's story is that Miss Gallasch and Miss Federle did bring to him a document purporting to be a codicil executed in the name of Mrs. Hack, but that it was not the same document as now bears his signature; that the signature of Mrs. Hack to the codicil brought to his office had been affixed by Miss Gallasch; that she stated that she had affixed it at the direction of Mrs. Hack, and that it was witnessed by Maggie Stewart and no one else. He testified that the codicil signed by him had the following history: That on February 25, 1913, he was called to the home of Mrs. Hack to give legal advice; that, while he was there, she produced this codicil which was signed by Mrs. Hack and already witnessed by Maggie Stewart, and asked him to sign it as a witness; that he advised her to have a new will prepared and she said she would, but on her insistence he did sign the codicil as a witness; that, after the will had been presented for probate and disallowed, this codicil was found by his brother and law partner, Albert Mohn, in a bank book of deceased and among some of her papers in a vault of a Red Wing bank.

The testimony is in direct conflict.. For the petitioner there is the testimony of Miss Gallasch and Maggie Stewart. Miss Gallasch's testimony is much discredited. We need only mention one or two of many impeaching circumstances. It is in evidence that Judge Converse, in a memorandum attached to a decision in one of the cases tried, said that Miss Gallasch's testimony was of little assistance to him save as it was corroborated by other credible evidence. Judge Erickson, probate judge of Goodhue county, expressed himself similarly after a hearing in which she testified. For example, he said that on one occasion she asked his leave to make an important insertion of figures in an inventory which she had previously filed in his court, and, after considerable discussion, she made the insertion, and that afterwards, while on the stand as a witness before him, denied that she had made the insertion or that she had ever asked to do so and said that she thought Mr. Mohn had inserted the figures. There is also testimony of a witness, Mr. Fox, a reputable man, that he overheard a quarrel between respondent and Miss Gallasch in respondent's office over a demand of Miss Gallasch for the return of a portion of a fee he had charged, and that in that controversy she said: "If you don't give us some money, we will fix you," and when he asked: "What can you do," she said: "Two women can do a good deal against one man." We are not disposed to accord to Miss Gallasch's testimony any substantial probative value.

The testimony of Maggie Stewart is positive and generally consistent. It is, however, impeached by the testimony of Mr. Pidgeon, one of the attorneys for Mr. Hack in the will contest. He said that, after the production of the codicil signed by respondent, he made investigation in regard to it, and to that end sought out Maggie Stewart, and that she, knowing the purpose for which he inquired, told him the codicil was all right. She denied this, but Mr. Pidgeon could hardly be mistaken. In another part of Mr. Pidgeon's testimony, he said she besought him to bring about a settlement and seemed concerned about it, and that he then asked her about the codicil and that "she said, that is all right, passing it off in that way." He says that he did not interrogate her about the witnesses to the codicil and that she said nothing about it when the names of the witnesses were written.

Against this testimony is the testimony of respondent, that of his

brother as to the finding of the codicil, and the testimony of Hedvig Federle. This lady testified to the finding of a codicil by Miss Gallasch and that she and Miss Gallasch took it to respondent's office and that Maggie Stewart was not present. Her testimony is not always frank and sometimes evasive, but, on being shown a photograph of the codicil in controversy, she testified very positively that it was not the same codicil that she and Miss Gallasch had taken to respondent's office, and she pointed out provisions in the photographic copy exhibited to her which she said she was positive were not in the codicil she had seen.

We have had some difficulty in reconciling respondent's conduct with his claims.

When he learned that this charge was made against him he sent to a reputable firm of attorneys in Red Wing, copy of alleged charges which he said he proposed to prefer against them. There is no suggestion that the retaliatory charges were well founded.

He sent for Maggie Stewart on several occasions on pretexts, some apparently subterfuges, and his conferences with her were not such as to inspire confidence in his cause.

On one occasion a detective played a discreditable part, his object apparently being to help respondent and to foment trouble between Miss Gallasch and Maggie Stewart.

After this charge had been made against him, he refunded $5,000 of the fee he had received from Miss Gallasch. He explains this on the theory that the settlement which he negotiated did not settle the controversy, and he realized that there was some ground for the contention that he had not fully performed the contract under which the fee was paid.

Respondent was asked to appear and did appear before a committee of the state bar association and told his story. He did not there mention the existence of a second codicil. It should, in justice, be said, however, that he had before that time mentioned the second codicil to one of the attorneys engaged in the Hack family litigation.

On the other hand, we are troubled to find any sufficient motive for so grave a crime. The codicil gave nothing to respondent's client that was not given her by the will of deceased. The will had been disallowed by the probate court, but from the record before us it seems hardly

possible that the decision could have been sustained on appeal. The probate judge seemed overcome by the apparent want of equity in the will.

If the will was invalid, it was because of defects in attestation which applied with equal force to the codicil. It is true the codicil seems to have been used in bringing about a settlement of the will contest, but of so little real avail would it have been in court that it would at least seem strange that an experienced lawyer would deliberately mutilate or alter it, knowing all the time that three persons, none intimates, and two of them nearly total strangers to him, would have full knowledge of his act.

The matter is an important one both to respondent and to the public. We have considered the evidence with great care and we have arrived at the conclusion that it is not sufficient to warrant us in sustaining the charges made in the petition.

BROWN, C. J. (dissenting).

The evidence shows that respondent knowingly made use of the invalid or defectively executed will to effect a settlement of the estate of Mrs. Hack favorable to his client and his own contingent fee. He should receive the punishment due for his misconduct. The veracity and intelligence of the witness Stewart, in my judgment, conclusively appear, all doubts on that score being completely removed by the conduct of respondent and those in his service in attempting by means strongly to be censured to discredit her as a witness. State v. Ettenberg, 145 Minn. 39, 176 N. W. 171.

I therefore dissent.